## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW ROCCO,<br>    *Plaintiff,*<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    *Defendant.* | No. 3:22-cv-944 (JAM) |

### ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE

In 1985, the Connecticut General Assembly enacted a law that required motor vehicle drivers to wear seat belts. *See* Conn. Gen. Stat. § 14-100a(c)(1). At the same time, however, the General Assembly provided that "[f]ailure to wear a seat safety belt shall not be considered as contributory negligence nor shall such failure be admissible evidence in any civil action." Conn. Gen. Stat. § 14-100a(c)(3).

The upshot is that—for *state court cases* involving motor vehicle accidents—§ 14-100a(c)(3) forecloses a state court defendant from arguing that the state court plaintiff was contributorily negligent because of his failure to wear a seat belt. It also bars any evidence that the state court plaintiff was not wearing a seat belt.

The question here is whether the same holds true for *federal court cases* arising under the Federal Tort Claims Act ("FTCA"). I conclude for reasons set forth below that § 14-100a(c)(3) applies with full force to a federal court action under the FTCA. Accordingly, notwithstanding spirited arguments by the government to the contrary, I will grant the motion to strike its affirmative defenses that rely on the plaintiff's failure to wear a seat belt.

### BACKGROUND

This case stems from a motor vehicle accident on Interstate 95 involving the plaintiff Matthew Rocco and another driver. Rocco has filed a complaint alleging that he and the driver

1

were going in the same direction when the other driver "veered into [Rocco's] lane of travel, striking [Rocco's] vehicle."[1] He further alleges that "[a]s a result of [this] collision, [Rocco's] vehicle was caused to cross four lanes of traffic and violently strike the bridge edge barrier which ejected [Rocco] and caused him to be struck by his vehicle, causing [Rocco] to sustain and suffer injuries…"[2] The complaint goes on to allege that the other driver was negligent in various ways such as by failing to pay attention to where he was going, by speeding, by failing to keep his vehicle under proper control, by failing to stay in his lane until he could switch lanes safely, and by operating a vehicle with defective brakes or failing to brake in time to avoid colliding with Rocco's vehicle.[3]

This is the kind of lawsuit involving a state law claim of negligence that would ordinarily be filed and litigated in state court. But it is in federal court because the other driver was a federal government employee acting within the scope of his federal employment. For such claims against a federal government employee, the FTCA requires a plaintiff to proceed against the United States government as the named defendant, and Rocco has done so here.

The government has filed affirmative defenses, including two that blame Rocco for failing to wear a seatbelt. One of the defenses alleges that Rocco "failed to wear a seatbelt while operating his vehicle, in violation of Conn. Gen. Stat. § [14-]100a(c)(1)."[4] The second defense alleges that Rocco's "failure to wear a seatbelt caused his injuries."[5]

---

[1] Doc. #1 at 2 (¶ 8).
[2] *Ibid.*  (¶ 9).
[3] *Id.* at 3 (¶ 11).
[4] Doc. #10 at 3 (¶ 5). "The operator of and any passenger in any motor vehicle … shall wear such seat safety belt while the vehicle … is being operated on any highway," subject to exceptions not applicable here. Conn. Gen. Stat. § 14-100(c)(1).
[5] Doc. #10 at 4 (¶ 6).

Rocco in turn has moved to strike both these defenses.[6] He claims they are foreclosed by Conn. Gen. Stat. § 14-100a(c)(3).[7] The government opposes the motion to strike.[8]

**DISCUSSION**

A court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense "is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019).[9]

The FTCA provides that when the United States is sued in tort it "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. It waives the federal government's sovereign immunity for personal injury tort claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The FTCA's reference to the "law of the place" is a reference to state law. And so "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).

Yet courts in FTCA cases do not wholesale apply *all* of the state law of the place where the act or omission occurred. Rather, "'state law will apply only if it is substantive, rather than procedural, and district courts applying state law in FTCA suits must determine as a threshold

---

[6] Doc. #11.
[7] Doc. #12 at 2.
[8] Doc. #14.
[9] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

3

matter whether that law is substantive.'" *Gonzalez v. United States*, -- F.4th --, 2023 WL

5437562, at *6 (2d Cir. 2023) (quoting *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021)).

Just what is the difference between a "substantive" law and a "procedural" law? The

question has bedeviled courts and commentators for decades now since the Supreme Court's

landmark decision recognizing the substantive/procedural distinction in *Erie R. Co. v. Tompkins*,

304 U.S. 64 (1938).[10] The *Erie* decision famously concluded for cases arising under federal

diversity jurisdiction that federal courts should apply their own procedural rules but that they

should generally apply state rules of substantive law. Justice Brandeis's opinion for the majority

declared that state substantive law must be applied because "[t]here is no federal general

common law" and that "Congress has no power to declare substantive rules of common law

applicable in a state whether they be local in their nature or 'general,' be they commercial law or

a part of the law of torts." *Id.* at 78. Justice Reed's concurrence warned that "[t]he line between

procedural and substantive law is hazy, but no one doubts federal power over procedure." *Id.* at

92 (Reed, J., concurring in part).

In the FTCA context, the Second Circuit has offered some guidance about what counts as

"substantive" law and what counts as "procedural" law. It has instructed that "substantive law is

'the law that governs the rights and obligations of individuals within a given jurisdiction,'" while

"procedural law is 'the judicial process for enforcing rights and duties recognized by substantive

law.'" *Corley*, 11 F. 4th at 85 (quoting *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir.

2019)). To similar effect, I have previously ruled that "the FTCA applies only those state laws

that contribute to or define the extent to which a private party is substantively liable to another"

---

[10] *See, e.g.*, Erwin Chemerinsky, FEDERAL JURISDICTION 351 (7th ed. 2016) ("[D]istinctions between substance and procedure are inherently ephemeral and thus difficult to draw…Ever since *Erie*, the Court has struggled to provide criteria to determine when federal law may be used in diversity cases.").

and that "[l]iability can—and frequently does—exist separate and apart from the procedures used to legally ascertain and resolve it." *Shields v. United States*, 436 F. Supp. 3d 540, 545 (2020).

As noted above, § 14-100a(c)(3) states that "[f]ailure to wear a seat safety belt shall not be considered as contributory negligence nor shall such failure be admissible evidence in any civil action." Is this law substantive or procedural or both?

I begin with the fact that the statute has two clauses separated by the word "nor." The first clause says "failure to wear a seat safety belt shall not be considered as contributory negligence," while the second clause says "nor shall such failure be admissible evidence in any civil action." Because the government's arguments are different for each clause, I will examine both clauses in turn.

### *The first clause*

The government concedes that "[t]he first clause sets forth a rule of substantive state law."[11] In other words, the government concedes that the first clause substantively bars a defendant from citing a plaintiff's failure to wear a seat belt in order to claim that the plaintiff was contributorily negligent. But that does not matter, says the government, because the government does not aim to show contributory negligence. Instead, according to the government, Rocco's failure to wear a seat belt goes to two very different issues: *causation* and *failure to mitigate damages*.

This distinction does not hold up under close inspection. Why? Because no matter what label the government tries to use for its defenses, it is in reality seeking to press a defense of

---

[11] Doc. #14 at 23.

contributory negligence. This is clear from the facts as alleged in this case and from the text and operation of Connecticut's contributory negligence statute. See Conn. Gen. Stat. § 52-572h.[12]

The alleged sequence of events in this case is as follows: the government driver's car collided with Rocco's car, Rocco lost control of his car, Rocco's car crashed into a barrier, and Rocco was thrown from his car resulting in injuries. If the government driver was not negligent, then the government faces no liability, and it need not argue that Rocco's failure to wear a seat belt caused his injuries or that a damages award should be offset for failure to mitigate damages.

So of necessity the government's claim that Rocco failed to wear a seat belt will be implicated only in the context of a claim that the government driver was negligent but that Rocco himself was *contributorily* negligent. The government wants to say (as it expressly alleges in one of its affirmative defenses) that Rocco's failure to wear a seat belt violated the law and therefore was negligent. And then it wants to say that this negligence "caused" Rocco's injuries. In other words, its "causation" defense is based on its intention to prove precisely what Connecticut law requires for a defendant to establish contributory negligence: first, that the plaintiff was negligent and second, that the plaintiff's negligence caused his injuries.[13]

---

[12] In 1973, Connecticut abolished the common law doctrine of contributory negligence and replaced it with a statutory regime of comparative negligence. *See* Conn. Gen. Stat. § 52-572h; *Stafford v. Roadway*, 312 Conn. 184, 195 (2014). "The purpose of the comparative negligence statute was to replace the former rule, under which contributory negligence acted as a complete defense, with a rule under which contributory negligence would operate merely to diminish recovery of damages based upon the degree of the plaintiff's own negligence." *Kramer v. Petisi*, 91 Conn. App. 26, 35 (2005), *certified question answered, judgment aff'd*, 285 Conn. 674 (2008). Yet the comparative negligence statute deploys the term "contributory negligence," § 52-572h(b), as does § 14-100a(c)(3), and, so far as I can tell, nothing in this case turns on any distinction between the terms "contributory negligence" and "comparative negligence."

[13] The application of Connecticut's contributory (comparative) negligence statute turns on both negligence and causation. The statute instructs that "if the damages are determined to be *proximately caused* by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages…." § 52-572h(c) (emphasis added). The statute's calculation of that share is based on the negligence of those parties "whose negligent actions were a *proximate cause* of the injury…" § 52-572h(d) (emphasis added). The law further instructs that the judge or jury must then calculate the damages based on "the percentage of negligence that *proximately caused* the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a *proximate cause* of the injury." § 52-572h(f) (emphasis added).

As to the government's argument that it merely wants to introduce evidence of causation, the Connecticut Appellate Court has debunked the notion that the failure to wear a seat belt may be used as a causation defense. In *Bower v. D'Onfro*, 38 Conn. App. 685 (1995), a defendant raised a due process challenge to the validity of § 14-100a(c)(3). As the Appellate Court outlined, "[d]espite the fact that the jury could reasonably have found that [one of the defendants] was speeding, was driving recklessly, did not apply his brakes quickly enough, followed [the plaintiff's] vehicle too closely and failed to maintain a proper lookout, the defendants' position appears to be that it is irrational for the legislature to have abolished the seat belt defense, especially where the plaintiff is thrown from the vehicle." *Id.* at 690. The Appellate Court responded that "[t]his issue was addressed in legislative debate" and that: "'The failure to wear a seat belt would be in no way involved in the issue of *causation* of the accident. The courts have clearly held that the *failure to wear a seat belt doesn't cause the accident*.'" *Id.* at 690–91 (citing 28 H.R. Proc., Pt. 23, 1985 Sess., pp. 8352, 8354, remarks of Representative Robert Farr) (emphasis added). The Appellate Court then went on to rule that "[e]liminating the seat belt defense *on the issue of causation* did not preclude the defendants from making other defenses as to causation." *Id.* at 691 (emphasis added).

The government fares no better with its alternative defense that evidence of a plaintiff's failure to wear a seat belt is proper for a defense of failure to mitigate damages. The contributory negligence statute—with its formula for reducing a plaintiff's damages to account for the plaintiff's own negligence—is just another way of saying that the plaintiff's own negligence amounted to a failure to mitigate his damages. As the Connecticut Supreme Court has explained, Connecticut's statutory version of contributory negligence enacts "a rule under which contributory negligence would operate *merely to diminish recovery of damages* based upon the

degree of the plaintiff's own negligence." *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 585–86 (1995) (emphasis added).

In an effort to try to show that a claim for contributory negligence would be different from its claim for failure-to-mitigate damages, the government says it does not contend that Rocco's failure to wear a seat belt caused the accident (as distinct from causing his injuries) and then it argues that the "ordinary meaning" of "contributory negligence" is that "it was plaintiff's negligence that contributed to and caused the accident."[14] But the problem with this argument is that it ignores the actual words and operation of Connecticut's contributory negligence statute. The statute is triggered by a showing that "*the damages* are … proximately caused by the negligence of more than one party," in which case "each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share" of damages. § 52-572h(c) (emphasis added). And the statute instructs that the damages award is based on "the percentage of negligence that proximately *caused the injury, death or damage to property* in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury." § 52-572h(f) (emphasis added).

Thus, a contributory negligence claim in Connecticut is a claim that the plaintiff *caused his own injuries and damages*, not merely that he caused the predicate *accident*. So there is no difference here between a claim that Rocco was contributorily negligent by failing to wear a seat belt and that Rocco failed to mitigate his damages by not wearing a seat belt.

Other Connecticut courts have rejected arguments that § 14-100a(c)(3) allows for a defendant to argue that the failure to wear a seat belt means that the plaintiff has failed to mitigate his damages. "The legislative history of [§ 14-100a(c)(3)] indicates that certain

---

[14] Doc. #14 at 23-24.

representatives favored allowing a mitigation of damages for failure to wear a seat belt, but did not prevail," and "[a]lthough the issue of mitigating damages has not been directly addressed by our Appellate Courts, the Superior Court appears to have held consistently that § 14-100a(c)(4) bars evidence of the failure to wear a seat belt for the purpose of proving contributory negligence or the failure to mitigate damages." *Ferentzy v. Ferentzy*, 2008 WL 2252404, at *4 (Conn. Super. Ct. 2008). "By making evidence of the failure to wear a safety belt inadmissible, the legislature endorsed a policy that, despite the duty to wear a safety belt, a driver or passenger who was injured (while not wearing a safety belt) through the negligence of another should not have his or her recovery reduced." *Ruth v. Poggie*, 1993 WL 498997, at *1 (Conn. Super. Ct. 1993).

The government argues that the doctrine of mitigation of damages was "untouched" by Connecticut's enactment of its contributory (comparative) negligence statute and § 14-100a(c)(3).[15] That is true in the abstract: a defendant in a motor vehicle negligence case may generally argue that a plaintiff failed to mitigate his damages. But here on the facts of this case it is apparent that the government's failure-to-mitigate-damages defense—insofar as it is based on Rocco's failure to wear a seat belt—is no more than a contributory negligence claim in disguise (*i.e.*, a claim that Rocco negligently breached a statutory duty to wear a seat belt and that this breach of duty caused all or part of Rocco's injuries and damages).[16]

Moreover, the government seeks a rather odd and unorthodox application of the duty to mitigate damages. Connecticut has "long adhered to the rule that one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries." *Preston v. Keith*, 217 Conn. 12, 15 (1991). The ordinary

---

[15] Doc. #14 at 16.

[16] The government is not precluded from otherwise pursuing a defense of failure to mitigate damages. For example, if Rocco claims that his injuries caused him to lose future income from employment, then the government may try to show that Rocco failed to mitigate his damages if he did not seek such employment if he was able.

application of the duty to mitigate damages presupposes the plaintiff's duty to engage in such mitigation *after* the plaintiff has been injured. Here, however, the government's failure-to-mitigate-damages theory rests on a notion that the plaintiff had a duty to start mitigating even before he suffered any damages in the first place.

Why would the Connecticut General Assembly bar a defendant from raising a defense of contributory negligence based on a plaintiff's failure to wear a seat belt while at the same leaving the door open for a defendant to end-run this prohibition by arguing that a plaintiff's failure to wear a seat belt goes merely to causation or failure to mitigate damages? I asked the government this question, and no convincing response was forthcoming.[17]

In short, the government's concession that the first clause of § 14-100a(c)(3) is substantive is dispositive. It stops the government from presenting a defense of contributory negligence, no matter whether that defense is mislabeled as one of "causation" or "failure to mitigate damages." Accordingly, I conclude that the first clause of § 14-100a(c)(3) must be given effect in this FTCA action and that it bars the government from proceeding with its affirmative defenses that rely on Rocco's failure to wear a seat belt.

### The second clause

But even if the first clause of § 14-100a(c)(3) allows the government's causation and failure-to-mitigate theories, it does not matter because the *second* clause of § 14-100a(c)(3) is also substantive and therefore must be given effect in federal court to categorically bar the seat belt evidence that the government wishes to introduce. To be sure, the second clause is cast in

---

[17] Doc. #36 at 17-21 (question-and-answer regarding legislative purposes including government's speculation that the General Assembly enacted the evidentiary bar because "we don't trust our [trial] court judges to give proper limiting instructions" and "we don't trust that the judge is going to be able to come up with a limiting instruction to tell the jury why, nevertheless, failing to wear a seat belt could reduce someone's damages" and "to prevent either some sort of jury sympathy or to, you know, override the many nuanced ways in which a court could effectuate a law that made sense even under their common law"); Doc. #40 at 2-3 (repeating argument that the General Assembly has not "merged the concepts of comparative negligence and mitigation of damages").

procedural evidentiary terms: "nor shall such failure be admissible evidence in any civil action." Yet the government does not dispute that "a state rule cast in procedural form may have a substantive function." *Love v. United States*, 17 F.4th 753, 755 (7th Cir. 2021) (Easterbrook, J.). In particular, "[i]t is well-established that a state's evidentiary rules can have substantive aspects in certain types of cases." *Coleman v. United States*, 912 F.3d 824, 832 (5th Cir. 2019).

What makes the difference between a mere rule of evidence and a substantive rule? As the Seventh Circuit has suggested in the course of evaluating the same kind of state law rule at issue here, "[i]t is a rule of evidence if it is motivated by concern that jurors attach too much weight to a plaintiff's failure to wear his seatbelt," but "[i]t is a substantive rule if it is designed not to penalize persons who fail to fasten their seatbelts." *Barron v. Ford Motor Co. of Canada*, 965 F.2d 195, 199 (7th Cir. 1992) (Posner, J.) (considering North Carolina law); *see also ibid.* (noting that "[a] pure rule of evidence ... is concerned solely with accuracy and economy in litigation"). The Seventh Circuit in *Barron* concluded that the state law evidentiary rule was substantive because its apparent substantive purpose was to avoid penalizing a plaintiff who "failed to take reasonable measures to reduce the severity of the accident if one occurred." *Ibid.*

Later decisions have agreed. For example, according to Judge Easterbrook, "[o]ne notorious example [of a state law evidentiary rule that is substantive] is the rule, adopted in many states, that the defendant in a tort suit arising from an automobile accident cannot show that the injured party failed to wear a seat belt." *Love*, 17 F.4th at 755. "This rule, though stated as one about evidence, implements the substantive norm that failure to use a particular self-protective device cannot be asserted as a ground of contributory negligence. The seatbelt rule therefore applies in federal litigation." *Ibid.*

The Tenth Circuit has also agreed. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 884-85 (10th Cir. 2006) (concluding that Oklahoma statute "directing that evidence of the use or non-use of seat belts is inadmissible 'in any civil suit in Oklahoma'" was a substantive rule for purposes of federal diversity negligence actions because it "reflects substantive state policy to the extent that drivers and passengers, while required by law to wear their seat belts, should not be penalized, through connotations of fault, beyond a small statutory fine"); *Gardner By & Through Gardner v. Chrysler Corp.*, 89 F.3d 729, 733–736 (10th Cir. 1996) (concluding that Kansas law stating that "[e]vidence of failure of any person to use a safety belt shall not be admissible in any action for the purpose of determining any aspect of comparative negligence or mitigation of damages" was "not simply a rule of evidence, which we could then ignore under our diversity jurisdiction, but represents the substantive law of Kansas" for purposes of negligence actions).

Overall, "the overwhelming majority of courts which have considered this issue in other jurisdictions have determined that a legislative policy requiring the exclusion of evidence of seatbelt nonuse is a matter of substantive law." *Strout v. Paisley*, 2000 WL 1900313, at *3 (D. Me. 2000); *see also Huff v. Shumate*, 360 F. Supp. 2d 1197, 1205-1208 & n.1 (D. Wyo. 2004) (concluding that Wyoming law stating that "[e]vidence of a person's failure to wear a safety belt as required by this act shall not be admissible in any civil action" was substantive and collecting cases).[18]

---

[18] It is true that some federal courts when considering claims not involving motor vehicle negligence have declined under *Erie* to give effect to the evidentiary exclusion rule outside the context of negligence claims. *See, e.g., Sims*, 469 F.3d at 885-886 (rule not applicable where defendant did not seek to show that driver's failure to wear seat belt was negligent but that he had a suicidal state of mind and had committed suicide thus triggering exclusion of an insurance policy). Such cases are not germane or helpful here because this action is about negligence.

Neither the Second Circuit nor the Connecticut Supreme Court have ruled on whether the second clause of § 14-100a(c)(3) is substantive. I am persuaded, however, by Judge Moll's reasoning that "§ 14-100a(c)(3) is not merely an evidentiary rule, but is substantive in nature," and "the fact that the express language of § 14-100a(c)(3) uses the word 'evidence' does not render the statute a mere evidentiary rule," because "'[o]n occasion, a rule phrased in terms of evidence may in fact be a rule of substantive law.'" *DeSalle v. Wal-Mart Stores East, LP*, 2016 WL 6884132, at *3 (Conn. Super. Ct. 2016) (quoting Restatement (Second), Conflict of Laws § 138, comment (c) (1971)). According to Judge Moll, "the legislative history underlying the enactment of § 14-100a(c)(3) makes clear that the statute was designed to abolish the [failure to wear] seat belt defense as a matter of Connecticut's substantive law." *Ibid.* (citing 28 H.R. Proc., Pt. 23, 1985 Sess. p. 8354, remarks of Representative Robert Farr).

To similar effect, Judge Hurley has reviewed at length the legislative history of § 14-100a(c)(3). *See Ciccarelli v. Turner*, 2006 WL 3690965, at *2 (Conn. Super. Ct. 2006). He concluded that "the legislative history of § 14-100a(c)(3) clearly shows that the sole purpose of this evidentiary exclusion was to benefit plaintiffs by preventing defendants from using the seatbelt defense to reduce damage awards in civil cases," and "[i]t was not intended to benefit defendants by preventing plaintiffs from proving that defendants' violations of § 14-100a(c)(1) caused or contributed to plaintiffs' injuries." *Ibid.*

The government does not point to any contrary legislative history to suggest that the second clause of § 14-100a(c)(3) was intended to be purely procedural. Instead, the government denies the relevance of legislative history, arguing that because the statute itself is not ambiguous, it is improper to consider legislative history at all.

I do not agree. The statute on its face does not announce its purpose, so it is ambiguous with respect to its purpose. Because of this ambiguity, it is appropriate to consult legislative history to consider its purpose. *See Comm'r of Mental Health & Addiction Servs. v. Freedom of Info. Comm'n*, 347 Conn. 675, 702 n. 13 (2023) (citing Conn. Gen. Stat. § 1-2z allowing resort to "extratextual evidence" such as legislative history if statutory language is ambiguous); *see also* Abbe R. Gluck, *Intersystemic Statutory Interpretation: Methodology as "Law" and the* Erie *Doctrine*, 120 YALE L.J. 1898 (2011) (explaining why a court, when deciding whether a state rule is procedural or substantive, should generally consult the interpretive rules—including those governing use of legislative history—of the states rather than the federal courts).

In any event, I doubt that a finding of statutory ambiguity is necessary in order to look at legislative history. The usual constraint on consulting legislative history applies when the *meaning* of the words of the statute is ambiguous. *See, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (noting that "[i]n statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself" and that "[w]here, as here, that examination yields a clear answer, judges must stop.…[L]egislative history" may not "be used to muddy the meaning of clear statutory language"). But no one here debates the meaning of § 14-100a(c)(3): it prevents a defendant from mounting a contributory negligence defense based on a plaintiff's failure to wear a seat and it further prevents the admission of evidence in any civil action that the plaintiff was not wearing a seat belt.

Instead, the debate here is about the statute's *purpose*. Does the law's evidentiary prohibition have a substantive purpose so that it applies not only in state court but a federal court as well? When courts are called upon to assess the purpose—as distinct from the meaning—of a

14

statute, the law does not require a court first to decide that the words of the statute are ambiguous. For example, in the equal protection context, courts routinely assess the underlying purpose of statutes that on their face are facially neutral and not ambiguous about their meaning. *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2332, 2349 (2021) (noting that "an equal-protection challenge to a facially neutral rule requires proof of discriminatory purpose or intent" and approving of district court's consideration of "relevant legislative history" among other sources to conclude that a statute was not enacted with a discriminatory purpose); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (discussing how in the Equal Protection context "legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports" to deciding "whether racially discriminatory intent existed").

Moving on, even if I were to ignore the legislative history and focus instead solely on the words of the statute, these words in context favor a conclusion that the second clause's evidentiary restriction has a substantive purpose. Recall, of course, that the second clause is conjoined by the word "nor" with the first clause, and the government has conceded that the first clause is substantive. The word "nor" is ordinarily a "function word" used "to introduce . . . the second and each following member of a series of items each of which is negated."[19] This suggests that the second clause by association is substantive because it relates to the substantive prohibition of the first clause. If anything, the second clause *expands* on the substantive first clause because it applies not just to actions implicating claims of contributory negligence but also to "any civil action." Conn. Gen. Stat. § 14-100a(c)(3). It would be counter-intuitive to conclude that the Connecticut General Assembly—having conjoined the first and second clauses

---

[19] *See Nor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/nor (last visited September 24, 2023).

within one single sentence—intended the first clause to be substantive but the second clause to be merely procedural.

Lastly, the government argues in the alternative that the second clause of § 14-100a(c)(3) is preempted by the Federal Rules of Evidence. Rule 402 of the Federal Rules of Evidence provides that all relevant evidence is admissible, subject to exceptions not applicable here. *See* Fed. R. Evid. 402. According to the government, because Rocco's failure to wear a seat belt is relevant to the issues of causation and mitigation of damages, Rule 402 preempts § 14-100a(c)(3)'s evidentiary limitation.[20]

But this argument overlooks the role of state law to set the bounds on what is relevant in the context of a state law claim for negligence. "Where a state law excludes certain evidence in order to effect substantive policy considerations, Rule 401 acts to exclude the evidence since the proposition for which the evidence is submitted is not properly provable and, therefore, irrelevant to the claim." *Sims*, 469 F.3d at 881; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 2493143, at *2 (S.D.N.Y. 2017) (same).

Moreover, the Federal Rules of Evidence do not trump a state evidentiary rule if—as here—the evidentiary rule has a substantive purpose. "Several circuits have recognized … that some state evidence rules might be so closely related to state substantive provisions that the state evidence rule should be applied in federal court diversity cases, even if evidence is excluded that would otherwise be admitted." *Sarkees v. E. I. Dupont De Nemours & Co.*, 15 F.4th 584, 589 (2d Cir. 2021).

For example, some States have a substantive rule that a plaintiff's recovery in tort should not be reduced by amounts received in compensation from collateral sources, and they likewise

---

[20] Doc. #14 at 25–27.

have rules that categorically preclude any evidence of collateral source payments. "Obviously, where a state has a substantive rule prohibiting a defendant from reducing a plaintiff's damage award by the amount of money the plaintiff has obtained or will obtain from a collateral source, allowing a defendant to present evidence of that amount would undermine the state's substantive rule." *Ibid.* The same holds true here, where allowing evidence that Rocco did not wear a seat belt would undermine Connecticut's rule that the failure to wear a seat belt may not be used as grounds for a defense of contributory negligence.

In short, despite the framing of the second clause in terms of an evidentiary bar, the second clause of § 14-100a(c)(3) has a substantive purpose to avoid penalizing a plaintiff for failure to wear a seat belt if the plaintiff has been the victim of another driver's negligence. Accordingly, I conclude that the second clause of § 14-100a(c)(3) must be given effect in this FTCA action and that it bars the government from proceeding with its affirmative defenses that rely on Rocco's failure to wear a seat belt.

## CONCLUSION

For the reasons stated above, the Court GRANTS the plaintiff's motion to strike the fifth and sixth counts of the defendant's affirmative defenses (Doc. #11).

It is so ordered.

Dated at New Haven this 25th day of September 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge